IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IVONNE P. MACHADO, | ) | CIVIL NO. 12-00544 RLP |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | GRANTING IN PART AND DENYING IN |
| vs. | ) | PART DEFENDANT THE REAL ESTATE |
| | ) | RESOURCE, LLC, dba PRUDENTIAL |
| THE REAL ESTATE RESOURCE, | ) | ADVANTAGE REALTY'S MOTION FOR |
| LLC, dba PRUDENTIAL ADVANTAGE | ) | SUMMARY JUDGMENT |
| REALTY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT THE REAL ESTATE RESOURCE, LLC, dba PRUDENTIAL ADVANTAGE
REALTY'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant The Real Estate Resource,
LLC, dba Prudential Advantage Realty's ("Defendant") Motion for
Summary Judgment, filed on June 13, 2013, ("Motion"). See ECF
No. 25. On July 5, 2013, Plaintiff Ivonne P. Machado
("Plaintiff") filed her memorandum in opposition to the Motion,
and on July 12, 2013, Defendant filed its reply. See ECF Nos.
30, 33. The Motion came on for hearing before the Court on July
26, 2013, at 10:00 a.m. Tracy S. Fukui, Esq. appeared on behalf
of Defendant, and Charles H. Brower, Esq. and Michael P. Healy,
Esq. appeared on behalf of Plaintiff. Based on the following,
and after careful consideration of the Motion, the supporting and
opposing memoranda, declarations, and exhibits attached thereto,

and the record established in this action, the Court HEREBY
GRANTS IN PART AND DENIES IN PART the Motion.

<u>BACKGROUND</u>

On October 13, 2009, Plaintiff was hired by Defendant's
Vice President of Operation, Simpson Tsang, as an escrow manager
for Defendant, a real estate brokerage.  Machado Decl., ECF No.
32-1, at ¶ 2; Tsang Decl., ECF No. 25-6, at ¶¶ 1-2, 7.  Plaintiff
is originally from Indonesia, and English is her second language.
Machado Decl. ¶ 4.  From her initial hire, Tsang was aware that
Plaintiff was from Indonesia and spoke with an accent.  Tsang
Decl. ¶ 34; Ex. F.

Defendant's escrow managers are primarily responsible
for ensuring that the escrow process for purchase contracts
entered into under its brokerage are completed in a professional
and expeditious manner.  Tsang Decl. ¶ 8.  Escrow managers are
the primary contact with the client and agents once in escrow and
must make sure all contract escrow deadlines are met.  <u>Id.</u> at ¶¶
8-9.  Defendant's business is reliant upon repeat business and
referrals from clients who are satisfied with their agents and
their brokerage, including services received from the escrow
manager once their sales contracts are in escrow.  <u>Id.</u> at ¶¶ 2-4,
8.  Thus, good communication skills are essential to the position
of escrow manager.  <u>Id.</u> at ¶ 8; Machado Dep., ECF No. 27-4, at
40:25-41:3.

On July 15, 2011, Tsang and Kevin Inn, Defendant's Vice President of Sales and Business Development, met with Plaintiff and informed her of Tsang's decision to terminate her employment with Defendant.  Tsang Decl. ¶ 31; Machado Decl. ¶ 23.  Plaintiff states that Tsang and Inn told her that she was being fired because of her "strong accent" because her accent "would not let [her] be successful with their company."  Id.  Defendant states that Plaintiff was terminated based on her "poor performance," including "the multiple errors she made on escrow transactions, her failure to meet contractual deadlines, the complaints regarding rudeness to clients and agents, and her deficient communication skills[.]"  Tsang Decl. ¶¶ 31, 35.  Defendant claims that Plaintiff was not terminated because of her national origin or Indonesian accent and that the basis for Plaintiff's deficient communication skills was not of consequence in Tsang's decision to terminate Plaintiff.  Id. at ¶ 35.

According to Plaintiff, she met with Tsang at least once per month while she worked for Defendant.  Machado Decl. ¶ 10.  During this time, Tsang never told Plaintiff that she was making mistakes or not communicating properly; he always told her that she was doing a good job.  Id.  Plaintiff states that Tsang "never mentioned [her] accent until he terminated [her] on July 15, 2011."  Id.  Plaintiff contends that the first time she was told about having performance issues was July 18, 2011.  Id. at ¶

3

26.  Plaintiff further alleges that she has worked for other real estate brokerage companies in the past and that no one at these previous companies said that she had a strong accent or that they could not understand her.  Id. at ¶ 6.

On January 6, 2012, Plaintiff filed a charge of discrimination with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC").  See Compl., ECF No. 1-2, at ¶ 13.  On June 20, 2012 and July 11, 2012 respectively, the HCRC and EEOC issued right to sue letters to Plaintiff.  See id. at ¶ 14.  On September 8, 2012, Plaintiff filed her Complaint in state court.  See id.  On October 9, 2012, Defendant removed the case to this Court.  See Notice of Removal, ECF No. 1.  Jury trial is currently set before the undersigned on November 13, 2013.  See ECF No. 18.

LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of

4

summary judgment." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case, or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. <u>Id.</u> at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 324.

5

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1030 (9th Cir. 2001). Thus, the court is not obligated "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996). <u>See also</u> LR 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the record not otherwise referenced in the separate concise statements of the parties. . . . [or] to review exhibits in their entirety.").

When conducting its analysis, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>Matsushita</u>, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255.

<u>ANALYSIS</u>

**I.   Employment Discrimination Claims**

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Hawaii law similarly prohibits discrimination based on "race, sex, including

6

gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status." Haw. Rev. Stat. § 378-2. In construing employment discrimination claims brought pursuant to state law, Hawaii courts look "to the interpretations of analogous federal laws by the federal courts for guidance." Shoppe v. Gucci Am., 94 Hawai'i 368, 377, 14 P.2d 1049, 1058 (2000).

### A.   Proper Summary Judgment Framework for Title VII Claims

As an initial matter, the Court must clarify some understandable confusion regarding the plaintiff's burden of proof in a Title VII disparate treatment case.[1]  In its moving papers, Defendant relies on the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which is the typical analysis applied by employers moving for summary judgment on a Title VII claim brought by an employee. Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she

---

[1]   See Costa v. Desert Palace, Inc., 299 F.3d 838, 851-54 (9th Cir. 2002) (describing Title VII jurisprudence as a "quagmire that defies characterization despite the valiant efforts of various courts and commentators," "chaos," and a "morass" and stating that there "has been considerable misunderstanding" regarding the McDonnell Douglas burden-shifting analysis).

suffered an adverse employment action; and (4) other employees
with qualifications similar to her own were treated more
favorably.  Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116,
1123 (9th Cir. 2009) (quoting Chuang v. Univ. of Cal. Davis, Bd.
of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000)).  If the plaintiff
succeeds in presenting a prima facie case, the burden shifts to
the defendant to articulate a "legitimate, nondiscriminatory
reason" for its allegedly discriminatory conduct.  Noyes v. Kelly
Servs., 488 F.3d 1163, 1167 (9th Cir. 2007) (quoting Chuang, 225
F.3d at 1123-24).  If the defendant provides such a reason, the
burden then shifts back to the plaintiff to raise a triable issue
of fact that the defendant's proffered reason was a pretext for
unlawful discrimination.  Id. (citing Chuang, 225 F.3d at 1124).

       Here, Plaintiff "submits that this is a case of direct
evidence discrimination based on National Origin/Ancestry."
Pl.'s Mem. Opp. Mot. 10.  As a result, Plaintiff asserts that
"the McDonnell Douglas framework for establishing a prima facie
case of discrimination is not applicable to this case and
Defendant must meet its burden of articulating a non
discriminatory [sic] reason for terminating Plaintiff."  Id.
Under older Ninth Circuit precedent, Title VII plaintiffs could
produce direct or circumstantial evidence of an employer's
discriminatory intent as an alternative means of establishing a
prima facie case instead of satisfying the four-prong test
discussed above.  See, e.g., Vasquez v. Cnty. of L.A., 349 F.3d

8

634, 640 (9th Cir. 2003) ("For a prima facie case, Vasquez must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in McDonnell Douglas Corp. v. Green or with direct or circumstantial evidence of discriminatory intent.") (citations omitted); Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997) ("The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in McDonnell Douglas or by more direct evidence of discriminatory intent.") (alterations and citation omitted); Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985), amended by 784 F.2d 1407 (9th Cir. 1986), ("Because Lowe has met the four-part McDonnell Douglas requirements and alternatively because she has provided direct and circumstantial evidence of discriminatory intent, she established a *prima facie* case of disparate treatment on the basis of race."). In this line of cases, assuming the plaintiff met her prima facie showing, the remaining two parts of the burden-shifting McDonnell Douglas framework were then addressed by the court. See, e.g., id. at 1007-09 (discussing employer's articulated nondiscriminatory reason and employee's evidence of pretext).

More recent Ninth Circuit decisions, however, have clarified that a disparate treatment plaintiff may opt to not utilize the McDonnell Douglas burden-shifting framework at all in responding to a summary judgment motion. Instead, the plaintiff

may respond by producing evidence that a discriminatory reason more likely than not motivated the employer.  See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008) ("Typically, we apply the familiar McDonnell Douglas burden shifting framework for Title VII and § 1981 claims.  A plaintiff may alternatively proceed by simply producing 'direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer.'") (quoting Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (internal citations omitted)). Specifically, the Ninth Circuit has stated that "although the McDonnell Douglas framework is a useful tool to assist plaintiffs at the summary judgment stage so that they may reach trial, nothing compels the parties to invoke the McDonnell Douglas presumption." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (quoting Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002) (internal quotation marks omitted)). Rather, when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish her case: she "may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." Id.  See also Nguyen v. Qualcomm, Inc., 501 Fed. Appx. 691, 694 (9th Cir. 2012) ("the McDonnell Douglas framework is inapplicable here because Nguyen presented direct evidence of discrimination")

(citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)).

This district has recognized this distinction in our recent case law.  See, e.g., Rutenschroer v. Starr Seigle Commc'ns, Inc., 484 F. Supp. 2d 1144, 1151 (D. Haw. 2006) ("When a defendant moves for summary judgment, the plaintiff alleging disparate treatment may respond in one of two ways.  On one hand, a plaintiff may provide direct or circumstantial evidence 'that a discriminatory reason more likely motivated the employer' to engage in disparate treatment.  In the alternative, the plaintiff may survive summary judgement [sic] by engaging in the McDonnell Douglas burden shifting analysis."); Lalau v. City & Cnty. of Honolulu, Civ. No. 11-00268 SOM-RLP, 2013 WL 1337000, at *8 (D. Haw. Mar. 28, 2013) ("Lalau eschews the McDonnell Douglas framework and opts to go directly to producing evidence that the City likely acted for a discriminatory reason.  Lalau's approach is clearly permitted."). Likewise, this Court will analyze Plaintiff's alleged direct evidence of national origin discrimination without applying the McDonnell Douglas framework.

When a plaintiff does not rely on the McDonnell Douglas framework to oppose a summary judgment motion, but seeks to establish her case through the submission of actual evidence, "very little such evidence is necessary to raise a genuine issue of material fact regarding an employer's motive[.]"  Lowe, 775 F.2d at 1009.  "[A]ny indication of discriminatory motive --

11

including evidence as diverse as the [defendant's] reaction, if any, to [plaintiff's] legitimate civil rights activities; and treatment of [plaintiff] during [her] prior term of employment; [defendant's] general policy and practice with respect to minority employment -- may suffice to raise a question that can only be resolved by a factfinder." Id. (internal quotation marks and citation omitted). See also Cordova, 124 F.3d at 1149-50 ("because of the inherently factual nature of the inquiry, [plaintiff] need produce very little evidence of discriminatory motive to raise a genuine issue of fact"); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) ("summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's [protected characteristic]").

For an employee to meet this burden, the Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005). Relying on a supervisor's single discriminatory comment is consistent with "the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity

to evaluate the credibility of the witnesses." <u>McGinest</u>, 360 F.3d at 1112.  "[W]hen a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated." <u>Id.</u>  When a plaintiff has established a prima facie inference of disparate treatment though direct or circumstantial evidence of discriminatory intent -- *even if* the employer has a legitimate, nondiscriminatory reason for taking the adverse employment action -- she "will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." <u>Cordova</u>, 124 F.3d at 1150 (emphasis in original). <u>See also Lalau</u>, 2013 WL 1337000, at *8.

**B.  Plaintiff's Evidence of Defendant's Alleged National Origin Discrimination**

Plaintiff asserts that "[t]he comments made to [her] by Tsang and Inn when she was terminated, that Plaintiff was being terminated for having a 'strong accent', are direct evidence to Defendant's discriminatory motive to terminate Plaintiff."  Pl.'s Mem. Opp. Mot. 10.  In particular, Plaintiff contends:

> Although Defendant did not make a specific
> derogatory ethnic comment about Thai people,
> Tsang and Inn stated that the reason for
> terminating Plaintiff was because of her
> "strong accent".  Plaintiff is from Thailand
> and has a slight accent.  The stated reason
> for terminating Plaintiff has everything to do
> with her national origin and ancestry.

13

Id. at 11.  Defendant claims that, even assuming the statement regarding Plaintiff's accent was made, see Def.'s Mem. Supp. Mot. 21 n.4, it is merely circumstantial, or indirect, evidence of Defendant's alleged discriminatory motive.  See id. at 18-19; Def.'s Reply 11-12.

Direct evidence is "evidence which, if believed proves the fact [of discriminatory animus] without inference or presumption." Vasquez, 349 F.3d at 640 (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (alteration in original)).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Dominquez-Curry, 424 F.3d at 1038 (quoting Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005)).  Circumstantial evidence, on the other hand, "is evidence that requires an additional inferential step to demonstrate discrimination." Coghlan, 413 F.3d at 1095.  Circumstantial evidence can take two forms: first, the plaintiff can make an affirmative case that the employer is biased, e.g., by using statistical evidence; second, the plaintiff can make her case negatively, by showing that the employer's proffered explanation for the adverse action is unworthy of credence.  Id.

With respect to the pretext inquiry in the McDonnell Douglas framework, the Ninth Circuit has characterized the distinction between direct and circumstantial evidence as "crucial, because it controls the amount of evidence that the

14

plaintiff must present in order to defeat the employer's motion for summary judgment." Coghlan, 413 F.3d at 1095.  When evidence of pretext is direct, the plaintiff need offer "very little evidence to survive summary judgment in a discrimination case." E.E.O.C. v. Boeing, 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting Lam v. Univ. of Haw., 40 F.3d 1551, 1564 (9th Cir. 1994)).  But, "[w]here evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting Godwin, 150 F.3d at 1222).

When a plaintiff opts not to rely on the McDonnell Douglas framework but instead to produce evidence that an employer likely acted for a discriminatory reason, however, the effect of producing direct versus circumstantial evidence is more uncertain.  In this context, the Ninth Circuit has said, "In Costa, the Supreme Court held that circumstantial and direct evidence should be treated alike, noting: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" McGinest, 360 F.3d at 1122 (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)).  See also Cornwell, 439 F.3d at 1030 ("in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies

15

on direct evidence").  On other hand, the Ninth Circuit has also
stated that "[o]ur circuit has not clearly resolved" whether
circumstantial evidence of discriminatory animus must be
"specific" and "substantial." Davis v. Team Elec. Co., 520 F.3d
1080, 1091 & n.6 (9th Cir. 2008).

Despite this uncertainty within the Ninth Circuit, the
Court finds that Plaintiff's evidence of national origin
discrimination is sufficient to withstand summary judgment.  In
the first instance, comments made by an employer regarding an
employee's accent have been considered as direct evidence of
national origin discrimination in other jurisdictions.  See,
e.g., In re Rodriquez, 487 F.3d 1001, 1009 (6th Cir. 2007);
Akouri v. State of Fla. Dep't of Transp., 408 F.3d 1338, 1347-48
(11th Cir. 2005).  Although this specific issue has not yet been
addressed by the Ninth Circuit, its decision in Fragante v. City
& County of Honolulu, 888 F.2d 591 (9th Cir. 1989), is helpful.
In Fragante, a Filipino man applied for a clerk's job with the
City & County of Honolulu, and although he placed high enough on
a civil service eligible list to be chosen for the position, he
was not selected because of a perceived deficiency in relevant
oral communication skills caused by his "heavy Filipino accent."
Id. at 593.  While the court did not make a specific holding as
to whether Fragante established a prima facie case of national

16

origin discrimination,[2] the court stated, "Fagrante's position is supported by the approach taken by the Equal Employment Opportunity Commission which submits that a plaintiff who proves he has been discriminated against solely because of his accent does establish a prima facie case of discrimination." Id. at 595. Fagrante's contention was "further supported by EEOC guidelines which define discrimination to include 'the denial of equal employment opportunity . . . because an individual has the . . . linguistic characteristics of a national origin group.'" Id. (quoting 29 C.F.R. § 1606.1).

Moreover, the Ninth Circuit's statements in Fragante regarding an employer's legitimate consideration of an employee's accent do not preclude Plaintiff's evidence from being characterized as direct here. Specifically, in Fragante, the court stated, "An adverse employment decision may be predicated upon an individual's accent when -- but only when -- it interferes materially with job performance. There is nothing improper about an employer making an *honest* assessment of the oral communication skills of a candidate for a job when such skills are reasonably related to job performance." Fragante, 888 F.2d at 596-97 (emphasis in original). However, just because an

---

[2]   See id. at 595-96 ("Because we find that Fragante did not carry the ultimate burden of proving national origin discrimination, however, the issue of whether Fragante established a prima facie case of discrimination is not significant, and we assume without deciding that he did.").

employer is permitted to *consider* an employee's accent when making an adverse employment decision, it does not follow that an employer's statement *cannot* be deemed as direct evidence that the employer *likely* acted for a discriminatory reason.[3]

That being said, even if the Court assumes that Plaintiff's evidence is circumstantial, it is "specific" and "substantial" enough to raise questions of fact as to Plaintiff's claims of disparate treatment based on national origin in violation of Title VII and HRS § 378-2.  See In re Rodriguez, 487 F.3d at 1013 (Batchelder, J., concurring) (employer's comments regarding an employee's accent are circumstantial evidence sufficient to overcome summary judgment motion).

> Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communication skills demanded by the job. We

---

[3] For example, an employer is permitted to discriminate on the basis of religion, sex, or national origin when these characteristics are a bona fide occupational qualification ("BFOQ") reasonably necessary to the normal operation of that particular business.  Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 200 (1991).  Nonetheless, the existence of an employer's potential BFOQ defense does not preclude an employee from presenting direct evidence of the employer's discriminatory intent.  See, e.g., Dominguez-Curry, 424 F.3d at 1038 (sexist comments were direct evidence of employer's discriminatory animus toward women in the workplace).

> encourage a very searching look by the
> district courts at such a claim.

_Fragante_, 888 F.2d at 596.  As much as Defendant urges the Court

to rely on _Fragante_ to grant it summary judgment, it is important

to note that Fragante had his day in court with a full trial on

the merits of his claim.  _See_ _id._ at 593.  Determining whether

Defendant made an "honest" assessment of Plaintiff's oral

communication skills and whether Defendant made a reasonable

investigation as to if those skills would "materially interfere"

with Plaintiff's job performance is a fact-intensive inquiry.

That inquiry is typically ill-suited for summary judgment, as

this case illustrates.  The disputes in the record over

Plaintiff's language ability and accent are themselves fatal to

Defendant's request for summary judgment.

    Defendant argues that Plaintiff's evidence that she was

terminated for having a "strong accent" is not specific or

substantial enough to raise a triable issue of fact that

Defendant's articulated legitimate, nondiscriminatory reason for

terminating Plaintiff was a pretext for unlawful discrimination.

Indeed, the pretext analysis under the McDonnell Douglas

framework has much in common with analysis of evidence a

plaintiff offers to show that an employer probably acted for a

discriminatory reason.  _See_ McGinest, 360 F.3d at 1123 (noting

the parallel and stating that "it is not particularly

significant" whether a plaintiff is seeking to show pretext under

19

McDonnell Douglas or relying on direct or circumstantial evidence of discriminatory intent).

Nevertheless, even under pretext case law, Plaintiff's evidence is sufficient to withstand summary judgment.  This Court's discussion in Lalau is instructive.  In Lalau, the plaintiff asserted that he had direct evidence of national origin discrimination based on a single alleged comment made by his employer referring to a need "to make the office safe" from the plaintiff because he was "a typical Samoan."  Lalau, 2013 WL 1337000, at *9 (citing plaintiff's declaration).  Relying heavily on the Ninth Circuit's analysis of pretext evidence in Davis, the Court found that "even if a plaintiff is relying on circumstantial evidence, a single discriminatory comment will pass the 'specific and substantial' standard if it is made by the plaintiff's supervisor or by a person who makes a decision as to an adverse employment action."  Id. at *12.  Thus, although the Court believed that the plaintiff's evidence was "as thin as it could be" and that said evidence "may end up being too thin to support a verdict at trial[,]" the Court concluded that this single discriminatory comment was "specific" and "substantial" enough to raise questions of fact as to the plaintiff's claims of disparate treatment.  Id. at *9, *12.  Therefore, the employer's summary judgment motion was denied.  Id. at *12.

Similarly here, although Plaintiff's evidence at this juncture consists entirely of a single disputed discriminatory

20

comment, it is sufficient to defeat Defendant's summary judgment motion.  Plaintiff has presented evidence that her employer "told [her] she was fired because of [her] 'strong accent[.]'"  Machado Decl. ¶ 23.  This evidence is "specific" and "substantial" because the statement was (1) made directly to Plaintiff by her supervisor, (2) as a basis for the adverse employment action, and (3) is inextricably intertwined with Plaintiff's national origin. As a result, Plaintiff raises questions of fact as to her claims of disparate treatment and summary judgment must be denied.

Finally, Defendant claims that it is entitled to the benefit of the "same actor inference" because Tsang is the same person that hired and fired Plaintiff after approximately 21 months of employment.  "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." Coghlan, 413 F.3d at 1096 (quoting Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996)).  This inference is based "on the principle that an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs," id., and may arise when the hiring and firing are "as much as a few years apart."  Schechner v. KPIX-TV, 686 F.3d 1018, 1026 (9th Cir. 2012).  The same actor inference is "neither a mandatory presumption (on the one hand) nor a mere possible

21

conclusion for the jury to draw (on the other).  Rather, it is a 'strong inference' that the court must take into account on a summary judgment motion."  Coghlan, 413 F.3d at 1098.

The same actor inference can be overcome, however, if the plaintiff provides "meaningful evidence that her supervisor harbored discriminatory animus," Johnson v. Boys & Girls Clubs of S. Puget Sound, 191 Fed. Appx. 541, 545 (9th Cir. 2006), or "evidence suggesting that [the employer] developed a bias against [the protected class]" during the interval between the favorable and unfavorable employment actions, Coghlan, 413 F.3d at 1097. Additionally, this Court has found that the same actor inference is rebutted where the plaintiff attests to post-hiring discriminatory comments made by the employer.  See Lalau, 2013 WL 1337000, at *9 n.1.  Likewise, in this case, the Court concludes that Plaintiff has presented enough evidence of a post-hiring allegedly discriminatory statement by Defendant to overcome the same actor inference.

## II.  Damages Claims

### A.  Emotional Distress

Defendant seeks summary judgment as to Plaintiff's claim for damages related to emotional distress.  In response to Defendant's request for answers to interrogatories, Plaintiff admits that she did not receive any psychological or psychiatric treatment and is not claiming any emotional or mental injuries as a result of Defendant's alleged wrongful termination.  See Fukui

Decl. Ex. I., at ¶ 7.  Plaintiff has not contested this response.
Therefore, to the extent that Plaintiff makes a claim for damages
related to emotional distress, summary judgment is granted and
the claim is dismissed.[4]

**B. Back Pay**

A plaintiff seeking back pay under Title VII has "a
duty to mitigate damages by seeking alternative employment with
'reasonable diligence.'" Caudle v. Bristow Optical Co., Inc., 224
F.3d 1014, 1020 (9th Cir. 2000) (citing 42 U.S.C. § 2000e-
5(g)(1)).  However, the employer has the burden of proving the
plaintiff's failure to mitigate damages.  See Odima v. Westin
Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995); Sangster v.
United Air Lines, Inc., 633 F.2d 864, 868 (9th Cir. 1980).  The
employer must prove "that, based on the undisputed facts in the
record, during the time in question there were substantially
equivalent jobs available, which [the plaintiff] could have
obtained, and that [the plaintiff] failed to use reasonable
diligence in seeking one."  Odima, 53 F.3d at 1497 (quoting EEOC
v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994) (emphasis
and alterations in original)).  See also Sias v. City
Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978) ("To
satisfy this burden, defendant must establish (1) that the damage

---

[4]  It is unclear whether Plaintiff ever asserted such a
claim, as her Complaint neither states a claim for emotional
distress nor specifies such damages in the prayer for relief.
See ECF No. 1-2.

suffered by plaintiff could have been avoided, I. e. [sic] that there were suitable positions available which plaintiff could have discovered for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.").

The term "substantially equivalent employment" "covers many things, including rate of pay, hours, working conditions, location of the work, kind of work, and seniority rights, if any." N.L.R.B. v. Carlisle Lumber Co., 99 F.2d 533, 539 (9th Cir. 1938). See also Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir. 1990) ("Substantially equivalent employment is that employment that afford virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated."). An unemployed claimant "need not go into another line of work, accept a demotion, or take a demeaning position" to mitigate damages. Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231-32 (1982).

Here, Defendant does not even attempt to show that there were substantially equivalent positions to escrow manager available to Plaintiff after she was terminated. Because Defendant failed to meet its burden, summary judgment as to Plaintiff's request for back pay should be denied on that basis alone. See Hughes v. Mayoral, 721 F. Supp. 2d 947, 968 (D. Haw. 2010) (denying hotel employer's motion for summary judgment as to

24

bellman and security guard's request for back pay where employer
pointed to newspaper advertisements for security guard, wait
staff, and valet positions but failed to explain how these
positions had virtually identical promotional opportunities,
compensation, job responsibilities, working conditions, and
status as plaintiff's former position).

Rather, relying on Caudle, Defendant states that
Plaintiff's "voluntary decision" to not apply for such work
demonstrates that she failed to mitigate damages. Def.'s Mem.
Supp. Mot. 32 (citing Caudle, 224 F.3d at 1020-21). In Caudle,
however, the plaintiff's voluntary withdrawal from the workplace
was due to her independent decision to stay home to care for her
young child. Caudle, 224 F.3d at 1019. The plaintiff "never
alleged (and there is no reason to otherwise believe) that her
decision to withdraw from the workforce . . . was in any way
affected by [her employer's] discriminatory termination of her
employment." Id. at 1020. In this case, by contrast, Plaintiff
specifically asserts that she "was upset about what happened and
was afraid to go back to an escrow job, so [she] tried her own
business for awhile when [she] did not get calls back about jobs
[she] applied for in [her] field." Machado Decl. ¶ 34. Because
Plaintiff's withdrawal was related to Defendant's allegedly
discriminatory termination of her employment, summary judgment as
to back pay is denied.

### C.    Front Pay

"Front pay" is "money awarded for lost compensation during the period between the judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001).  Defendant contends that Plaintiff has no claim for front pay because Plaintiff is currently employed at the same rate of pay during her employment with Defendant.  Defendant fails, however, to provide evidence of Plaintiff's pay rate while employed with Defendant to compare to her current pay rate with her new employer.  Accordingly, Defendant's request for summary judgment as to front pay is denied.

### D.    Other Special Damages

In addition to back pay and front pay, Plaintiff asserts the following special damages resulting from her termination: health insurance costs of $300 per month, late fees on mortgage payments of $150 per month, use of savings to start a business, and borrowed monies from family and a jewelry sale to pay bills.  See Fukui Decl. Ex. I, at ¶ 11.  Defendant contends that these claims for damages should be dismissed because Plaintiff has no evidence to support these claims and has failed to make the required disclosures regarding these items pursuant to Rule 26 of the Federal Rules of Civil Procedure.  In response to Defendant's assertion that Plaintiff did not provide a computation or documents in support of these special damages, see

26

Def.'s Concise Statement of Facts ("CSOF"), ECF No. 25-4, at ¶ 20, Plaintiff states that she has submitted tax returns to support her "wage loss" damages calculation of $57,000.00.  See Pl.'s Opp. CSOF, ECF No. ¶ 20; Machado Decl. ¶¶ 35-36.  Any calculation of "wage loss" damages, however, would go toward Plaintiff's claims for back pay and possibly front pay.  The other special damages claims specified by Defendant were uncontroverted by Plaintiff, and, at the hearing on the Motion, Plaintiff's counsel conceded that Plaintiff had not presented evidence to support these damages.  See LR 56.1(g) ("For the purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").  Therefore, the Court finds that Plaintiff's claim for other special damages should be dismissed and summary judgment should be granted.

### E.   Punitive Damages

"An award of punitive damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights."  Ngo v. Reno Hilton Resort Corp., 140 F.3d 1299, 1304 (9th Cir. 1998).  To be entitled to punitive damages, the plaintiff must demonstrate that the employer "almost certainly knew that what he was doing was wrongful and subject to punishment."  Id.  Under Hawaii law, punitive damages are

27

permitted when the plaintiff shows "by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or entire want of care which would raise the presumption of a conscious indifference to the consequences." Kahale v. ADT Auto. Servs., Inc., 2 F. Supp. 2d 1295, 1303 (D. Haw. 1998) (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989)).  Accepting the allegations in Plaintiff's Complaint as true, there is no showing that Defendant's actions meet this high standard.  Indeed, Plaintiff did not dispute Defendant's arguments with respect to this claim in her opposition.  Therefore, the Court finds that Plaintiff's request for punitive damages should be dismissed and summary judgment should be granted.

CONCLUSION

In accordance with the foregoing, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant The Real Estate Resource, LLC, dba Prudential Advantage Realty's Motion for Summary Judgment, filed on June 13, 2013, as follows:

(1)  As to Plaintiff's claim for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), summary judgment is DENIED.

(2)   As to Plaintiff's claim for employment discrimination under § 378-2 of the Hawaii Revised Statutes, summary judgment is DENIED.

(3)   As to Plaintiff's claims for special damages related to back pay and front pay, summary judgment is DENIED.

(4)   As to Plaintiff's claims for damages related to emotional distress, other special damages (health insurance costs, late fees on mortgage payments, use of savings to start a business, and borrowed monies from family and a jewelry sale to pay bills), and punitive damages, summary judgment is GRANTED and these claims are DISMISSED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, JULY 30, 2013.

_____
Richard L. Puglisi
United States Magistrate Judge


MACHADO V. THE REAL ESTATE RESOURCE LLC, ET AL.; CIVIL NO. 12-00544 RLP; MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT THE REAL ESTATE RESOURCE, LLC, dba PRUDENTIAL ADVANTAGE REALTY'S MOTION FOR SUMMARY JUDGMENT